UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| TASHELL JOHNSON, | : |
|         Plaintiff, | : |
| | : |
| v. | :   No. 5:20-cv-05501 |
| | : |
| ADECCO USA, | : |
|         Defendant. | : |

_____

**O P I N I O N**
**Motion to Compel Arbitration, ECF No. 5 - Granted**

**Joseph F. Leeson, Jr.**                                                                                                                                                                                **July 19, 2021**
**United States District Judge**

**I.**       **INTRODUCTION**

      The above-captioned action was filed by Plaintiff Tashell Johnson against her former employer Adecco USA, raising claims of pregnancy discrimination, retaliation, and failure to accommodate pursuant to the Pregnancy Discrimination Act ("PDA") and the Pennsylvania Human Relations Act ("PHRA"). Adecco moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Adecco asserts that Johnson agreed to binding arbitration for any disputes related to her employment. Johnson does not dispute the validity of the Arbitration Agreement ("Agreement"), but rather maintains that her claims fall outside the scope of the Agreement. For the reasons set forth below, Johnson's claims fall within the scope of that Agreement; therefore, the Motion to Compel Arbitration is granted.

## II.     BACKGROUND[1]

Prior to her employment with Adecco, on November 05, 2019, Johnson electronically signed an arbitration agreement.  *See* Arb. Agreement 4, ECF No. 5-2 (Johnson attested that she "voluntarily and knowingly executed this Dispute Resolution Agreement."). In pertinent part, the Agreement states:

> [T]he Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect.

*Id.* at 2.  The agreement to arbitrate "includes any Claims that the Company may have against Employee, and/or that Employee may have against the Company, Company Client(s), and/or Company and/or Company Client(s)' officers, directors, employees, agents, or parent, subsidiary, or affiliated entities."  *Id.*  Additionally, the "arbitration requirement does not apply to: (i) claims for workers compensation, state disability insurance and unemployment insurance benefits; or (ii) claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employment Retirement Income Security Act of 1974 or funded by insurance."  *Id.* Furthermore, there is an "Arbitration Opt-Out Option," in which employees may submit a form stating that they wish to opt out and not be subject to the arbitration requirements in the Agreement.  *Id.* at 3.

On or about November 19, 2019, Johnson began working for Adecco and reported for orientation to Adecco's warehouse in Easton, Pennsylvania.  *See* Compl. ¶¶ 11-13, ECF No. 1. Adecco was the staffing agency for Radial, a company who ran various clothing and perfume

---

[1]     The facts are taken from the Complaint and the Arbitration Agreement.  *See* ECF Nos. 1 and 5-2.

brands out of the warehouse where Johnson worked. *See id.* ¶¶ 13-14. The following day, Johnson reported to work at 6:00 a.m. *See id.* ¶ 16. Johnson, who was pregnant, knew that she needed to leave early, since she was scheduled for an anatomy scan at 10:30 a.m. *See id.* ¶ 17. After attempting to cancel her appointment, Johnson spoke to her supervisor at Radial. *See id.* ¶ 19. The Radial supervisor told Johnson that it was okay for her to go to her appointment but instructed her to notify the manager from Adecco that she would be leaving. *See id.* ¶¶ 20-21. After Johnson notified the manager from Adecco, she asked Johnson to fill out leave paperwork, which required a signature. *See id.* ¶¶ 22-23.

Johnson obtained the signature from her supervisor at Radial. *See id.* ¶ 24. Afterward, she gave the paperwork to a manager at Adecco named Vince Bianca. *See id.* ¶ 28. Bianca notified Johnson that only he could sign the paperwork allowing her to leave, not the manager from Radial. *See id.* ¶ 30. He also stated that she could not leave early as it was only her second day of work. *See id.* ¶ 31. Then, Bianca raised his voice and stated "[y]ou work for me, not Radial" and "[y]ou can't leave." *Id.* ¶¶ 32, 35. Bianca terminated Johnson, ordered her off the premises, called for security and threatened to call the police. *See id.* ¶¶ 36-38.

Following her termination, Johnson filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). *See id.* ¶ 5. On September 2, 2020, the EEOC issued Johnson a Right to Sue letter. *See id.* ¶ 7. Johnson initiated the above-captioned action on November 4, 2020, asserting claims of pregnancy discrimination, failure to accommodate, and retaliation pursuant to the PDA and PHRA. *See id.* at p.1. Johnson asserts that she was "capable of performing all of the essential functions of her job with or without reasonable accommodation," *id.* ¶ 40, and that she was pregnant within the meaning of the PDA and PHRA, *see id.* ¶ 41. Additionally, Johnson avers

that she was "subject to adverse employment actions, including, but not limited to, being terminated," *id.* ¶ 44, because of her membership in a protected group, namely pregnancy. *See id.* ¶ 45.

Adecco has moved to compel arbitration. *See* ECF No. 5. Johnson filed a brief in opposition to Adecco's motion, *see* Pl.'s Br. in Opp'n, ECF No. 8, and Adecco filed a reply brief, *see* ECF No. 9.

## III. LEGAL STANDARDS

### A. Standard of Review - Review of Applicable Law

In deciding a motion to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013). When it is apparent from the face of a complaint and documents relied upon in the complaint that a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under Rule 12(b)(6). *See id.* (quoting *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013)). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'" *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

While Adecco's motion does not address the proper standard, Johnson advocates that the Court employ a motion to dismiss standard under Rule 12(b)(6). Although the Complaint fails to

explicitly reference or attach the Agreement, the Agreement is attached as an exhibit to the Motion to Dismiss and neither party presents any facts challenging its validity. District judges in this Circuit have applied a Rule 12(b)(6) standard in similar factual situations. *See Maldonado v. SecTek, Inc.*, No. 19-CV-0693, 2019 U.S. Dist. LEXIS 133320, at *9 (E.D. Pa. Aug. 7, 2019) (applying a Rule 12(b)(6) standard even though "the Complaint does not reference or attach the [Arbitration Agreement] . . . and [the] Plaintiff does not provide any facts challenging its validity). Accordingly the Court will apply the Rule 12(b)(6) standard to the instant Motion.

      **B.**      **Motion to Dismiss under Rule 12(b)(6) – Review of Applicable Law**

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223,

230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).

    **C.**    **Motion to Compel Arbitration – Review of Applicable Law**

"The [FAA] requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) (citing 9 U.S.C. § 2). In determining whether an arbitration agreement is valid under the FAA, federal policy "requires federal courts to look first to the relevant state law of contracts." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003). Under both state and federal law, the court must read the arbitration agreement in light of the circumstances as they existed at the time the agreement was entered into. *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 66 (2015) (stating that under federal law, the court must consider the agreement "in the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the [parties] thereby contracting" (internal quotations omitted)).

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express v. McMahon*, 482 U.S. 220, 227 (1987). "A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable." *Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v.*

*Randolph*, 531 U.S. 79, 92 (2000)).  "All reasonable inferences from the evidence are to be granted to the party opposing arbitration."  *Id.* (citing *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)).

In order "[t]o compel arbitration under the FAA, a court must conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) the plaintiff's claims fall within the scope of that agreement."  *Maldonado*, 2019 U.S. Dist. LEXIS 133320, at *11-12 (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3rd Cir. 2009)).

### 1. Determining Validity of an Arbitration Agreement – Applicable Law

"While the [FAA] generally requires that federal courts apply a 'presumption in favor of arbitration,' this predisposition 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'"  *Sorathia v. Fidato Partners, LLC*, 483 F. Supp. 3d 266, 273 (E.D. Pa. 2020) (quoting *Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 130 (3d Cir. 2016)).  Rather the court must "make a neutral determination as to whether the arbitration agreement satisfies principles of state contract law."  *Id.* (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).  Under Pennsylvania law, "[b]efore concluding that there is a valid contract . . . the court must 'look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.'"  *Cook v. Gen. Nutrition Corp.*, 749 Fed. App'x. 126, 129 (3d Cir. 2018) (quoting *Blair*, 283 F.3d at 603).

### 2. Determining the Scope of an Arbitration Agreement – Applicable Law

"While an employee may generally pursue [his or her] federal statutory discrimination claims in federal court, 'an employee may waive [ ] . . . the right to seek relief from a court in the first instance.'"  *Maldonado*, 2019 U.S. Dist. LEXIS 133320, at *15 (citing *Harrell v. Kellogg*

*Co.*, 892 F. Supp. 2d 716, 720 (E.D. Pa. 2012)). "To determine whether a dispute falls within the scope of an arbitration clause, a court 'begin[s] by carefully analyz[ing] the contractual language in the arbitration clause at issue." *Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-CV-3962, 2018 U.S. Dist. LEXIS 3532, at *7 (E.D. Pa. Jan. 9, 2018) (quoting *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014)).

In many instances, such as when a collective bargaining agreement ("CBA") contains an arbitration clause, an agreement to arbitrate can only waive a judicial forum for an employee's statutory claims if the waiver is clear and unmistakable. *See Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 193 (3d Cir. 2020) (affirming that a CBA could waive an employee's judicial forum for statutory claims only if the waiver was clear and unmistakable). "The clear-and-unmistakable-waiver standard ensures that 'very general' arbitration clauses cannot waive a judicial forum for vindication of statutory rights." *Darrington*, 958 F.3d at 193 (citing *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-82 (1998)). This requires that "a clear and unmistakable waiver of a judicial forum for 'statutory antidiscrimination claims [must] be explicitly stated.'" *Id.* at 194 (quoting *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009)). "The clear-and-unmistakable-waiver standard is satisfied if an [arbitration agreement], interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims." *Id.* However, the Third Circuit clarified that "[t]he clear-and-unmistakable-waiver" standard "does not require magic words or prescribe any bright-line approach requiring enumeration of statutes." *Id.* at 194-95.

In contrast, where "one waives one's own right, the 'clear and unmistakable' standard is not required." *Voegele Mech., Inc. v. Local Union No. 690*, 403 F. Supp. 3d 447, 458 (E.D. Pa. 2019) (quoting *Interstate Brands Corp. v. Bakery Drivers, Local Union No. 550*, 167 F.3d 764,

767 (2d Cir. 1999)).  *See also Wright*, 525 U.S. at 80-81 (finding that the clear and unmistakable standard does not apply to an "individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)); *Kiesel v. Lehigh Valley Eye Ctr., P.C.*, No. 05-CV-4796, 2006 WL 1985788, at *7 (E.D. Pa. July 12, 2006) (same); *Stanton v. Prudential Ins. Co.*, No. 98-CV-4989, 1999 WL 236603, at *4 (E.D. Pa. Apr. 20, 1999) (same).

## IV.    ANALYSIS

Neither party contests the validity of the Agreement; therefore, this Court addresses only whether Johnson's claims fall within the scope of that Agreement.

Johnson asserts that her discrimination claims under the PDA and PHRA do not fall within the scope of the Agreement.  *See* Pl.'s Br. in Opp'n 3.  Johnson contends that the Agreement must be interpreted under the clear and unmistakable standard discussed in *Scott v. Educ. Mgmt. Corp.*.  Arguing that the "Agreement did not mention anywhere the issues of discrimination, retaliation, [or] failure to accommodate," Johnson asserts that there was not a clear and unmistakable agreement to arbitrate claims regarding pregnancy discrimination.  *See id.*

Johnson's reliance on *Scott* is misplaced.  The court in *Scott* analyzed the validity of the party's arbitration agreement, in contrast, this Court is analyzing the scope of the Agreement.  The *Scott* court explained: "Pennsylvania law requires that any agreement to arbitrate be 'clear and unmistakable,' and holds that 'such agreements should not be extended by implication.'" *See Scott*, 662 F. App'x at 131 (quoting *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964)).  The motion to dismiss in that case was founded "on the element of mutual assent," which required the court to determine whether the parties had demonstrated their agreement to be

bound by the arbitration policy.  *See id.* at 130-31 (refusing to enforce the arbitration policy because the plaintiffs explicitly disagreed with the terms of the policy).  Johnson, however, has not challenged the validity of the Agreement.  There is no suggestion in the above-captioned action that Johnson, who signed the Agreement, did not explicitly agree to arbitrate.

Further, because Johnson waived her own rights, as did the plaintiff in *Voegele*, the need for the waiver of a statutory anti-discrimination claim to also be clear and unmistakable does not apply.  *See Voegele Mech., Inc.*, 403 F. Supp. 3d at 460 (concluding that because "Voegele waived its own statutory rights, we find that Count One can be arbitrated despite the absence of a clear and unmistakable statement to that effect").  In *Darrington*, the Third Circuit explained that "*Wright* requires nothing more than it says. The clear-and-unmistakable-waiver standard is satisfied if a *collective bargaining agreement*, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims." *Darrington*, 958 F.3d at 194 (emphasis added).  Since Johnson's agreement to arbitrate is not part of a CBA, the clear and unmistakable standard does not apply.

The Agreement signed by Johnson and Adecco states that:

> [T]he Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect.

Arb. Agreement 2.  For the following reasons, Johnson's claims fall within the scope of the Agreement: (1) because the broad language of the Agreement encompasses her claims; and (2) in her complaint, Johnson grounds her PDA and PHRA claims around her employment with Adecco.

First, courts have interpreted similar arbitration agreements to apply broadly. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 271 n.5 (3d Cir. 2014) (finding the following arbitration language to be "fairly standard" and "interpreted to apply broadly": "[a]ll disputes and controversies of every kind and nature between the Parties arising out of or in connection with this Agreement" (citing *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as . . . 'arising out of' appear in arbitration provisions, they are normally given broad construction."))). "Courts within the Third Circuit have held that broad arbitration clauses in employment agreements encompass statutory claims." *Zeller-Landau*, 2018 U.S. Dist. LEXIS 3532, at *9-10. Additionally, "[c]ourts that encounter arbitration clauses encompassing 'any' claim, controversy, or dispute language routinely find that the dispute falls within the scope of the arbitration clause." *Soroko v. Atmos, Inc.*, No. 11-CV-6120, 2015 WL 5585350, at *7 (E.D. Pa. Sep. 23, 2015).

Additionally, multiple courts have found similarly broad language as containing a waiver of statutory claims, including discrimination claims under Title VII and the PHRA. *See e.g.*, *Gilmer*, 500 U.S. at 21 (affirming that an arbitration clause covering "any dispute, claim or controversy" required arbitration of a claim brought under the Age Discrimination and Employment Act); *Zeller-Landau*, 2018 U.S. Dist. LEXIS 3532, at *10-11 ("Because the arbitration clause is broad in scope and covers 'any claim, dispute or controversy that arises out of or related to Employee's employment with Employer or the termination of that employment,' it encompasses [plaintiff's] sex discrimination claims."); *Soroko*, 2015 WL 5585350, at *8 (granting motion to compel arbitration of plaintiff's age discrimination and PHRA claims where the arbitration clause at issue covered "any controversy or dispute arising out of or relating in any way to this Agreement or the Employee's employment with the Employer"); *Gillespie v.*

*Colonial Life & Acc. Ins. Co.*, No. 08-CV-689, 2009 WL 890579, at *7 (W.D. Pa. Mar. 30, 2009) (finding the plaintiff's Title VII and PHRA claims fell within the scope of an arbitration clause which required "every claim, controversy or dispute arising out of or related to this Agreement, or the breach thereof, ... [to] be settled by binding arbitration"); *Donahue v. Bearingpoint, Inc.*, No. 05-CV-2027, 2006 WL 208642, at *1 (E.D. Pa. Jan. 19, 2006) (compelling arbitration where the contract required arbitration of "all claims or disputes arising out of or relating to . . . the Employee's employment relationship with [the employer] . . . or cessation of such employment relationship"); *Hearon v. AstraZeneca*, No. 02-CV-3189, 2003 U.S. Dist. LEXIS 6628, at *13 (E.D. Pa. Mar. 24, 2003) (holding that the plaintiff's Title VII and PHRA claims fell within the scope of an arbitration clause that required any claim "arising out of or relating to any provision of this Contract or the Employee's termination ... [to] be settled by arbitration").

Finally, it is clear, by Johnson's own assertions, that her claims of discrimination fall within the scope of the Agreement. The Agreement covers "any and all disputes, claims or controversies arising out of or relating to [the] Agreement, the *employment relationship* between the Parties, or the *termination of the employment relationship*." Arb. Agreement 2 (emphasis added). Johnson brings claims under the PDA and PHRA, alleging that she "was subjected to adverse *employment actions*, including, but not limited to, being *terminated* as a result of her request for an accommodation." Compl. ¶ 44 (emphasis added). By her own admission, Johnson's claims arose from her employment and subsequent termination with Adecco. Thus, because the broad language of the Agreement encompasses Johnson's claims and because Johnson's PDA and PHRA claims are grounded in her employment with Adecco, they fall within the scope of the agreement to arbitrate.

## V.     CONCLUSION

Johnson entered into a valid arbitration agreement with Adecco and her claims of pregnancy discrimination, retaliation, and failure to accommodate, under the PDA and PHRA, fall within the scope of the Agreement.  Given the reasons stated above, along with the requirement that this Court resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, Adecco's motion to compel arbitration is granted.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge